PEOPLE OF PORTO RICO, Plaintiff and Appellee, *v.* FRANCISCO RODRÍGUEZ-HERNÁNDEZ, Defendant and Appellant.

No. 2647. Argued May 19, 1926.—Decided March 17, 1927.

*García Méndez & García Méndez* for the appellant. *José E. Figueras* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

Francisco Rodríguez Hernández killed Laureano González Badillo, and the said Rodríguez was charged with murder in the second degree and convicted of voluntary manslaughter. The information set out and it was shown, as conceded, that Rodríguez not only fired five shots at González, but also stabbed the deceased a number of times. The defendant sought an acquittal upon the theory of self-defense.

At the trial Aurelio Rodríguez was a witness for the prosecution. He testified that he heard three shots and, running up, found the defendant on the road; that the witness asked the defendant what had happened and the latter replied that he had had to kill Laureano González because he told González to remove some animals, but that González at the same time pressed upon the defendant with a *machete*, striking blows at the said defendant. Toward the close of his testimony the *fiscal*, without more, asked the witness whether he had not stated that he was related to the defendant and the witness denied that he had made such a statement, and that he was, in point of fact, not related to the said defendant. This was a government witness and if the *fiscal* was surprised by any part of his testimony relating to the defendant's theory of self-defense, nevertheless the *fiscal* directed no inquiry to him attempting to show that on previous occasions he had made contradictory statements.

Aurelio Cordero was another witness for the prosecution, who, with regard to the deceased bearing a *machete* and threatening the defendant, testified in substantially the same manner as the preceding witness. After the witness had testified that the defendant had said that the deceased had come upon him with a *machete* the *fiscal* asked the witness if he had made this statement to the *fiscal* before, and the witness replied that he had. "Or did you merely testify that he had said that he had killed the other man?" asked the *fiscal*. At another point in the examination it would appear that the *fiscal* was reading from something before him and he asked the witness if he had not said before that the witness saw the revolver, etc., that the defendant had told him that he had killed Laureano González and that the defendant went away and said nothing more. The *fiscal* did not offer to show to the witness the paper from which he was reading.

Subsequently, and after the examination of Aurelio Cor-

dero, who was the last witness presented by the government, the *fiscal* said: "Your Honor, I should like to offer the investigation made by my predecessor in order that the jury may arrive at the conviction that in expressing themselves these witnesses have made contradictory statements. It turns out that to the *fiscal* they said that they had only heard certain things, and afterwards they turn around and say that the defendant had complained that the other man had threatened and attacked him with a *machete.*" The Court: "You are going to present it, or do you present it?" The *fiscal:* "I am going to present it." The defendant: "We object." The Court to the *fiscal:* "For the purpose of partly attacking the credibility of this witness?" The *fiscal:* "Yes, Sir." The defendant: "We can not be affected by the presentation of these writings because there is almost a complete harmony between what the writings say and what was testified; perhaps a difference in what the defendant said, but for the purity of the proceedings, to adjust strictly to the laws of evidence, section 423 of the Code of Criminal Procedure directly prohibits the presentation by the *fiscal*, a committing magistrate or municipal judge of sworn statements taken in the investigation of a case which has to be submitted to a jury." The Court: "The court will admit these declarations for the purpose of impeaching in part the statements of these witnesses." The defendant: "We take exceptions because, according to law, a party who presents a witness may not impeach him, but may contradict him, showing that on other occasions he has made contrary statements, but the presentation as evidence of these statements taken in the investigation of the case is nothing else than the direct impeachment of the credibility of his witnesses. And further, because in order to impeach the veracity of a witness ('by such statements' understood), it is necessary to announce it when the witness is testifying for the further reason that to impugn and demonstrate that on other

occasions the witness has made distinct contrary statements it is necessary, in accordance with the decision in *People* v. *Kent*, 10 P.R.R. 325, that he be shown the document in which appear the statements which it is alleged are different from those which he made in open court." The statements were admitted and this admission is assigned as error.

Aurelio Rodríguez, as we have seen, was only asked whether he was not a brother of the defendant and whether he did not say so to the *fiscal*. His deposition says that they were brothers and on the witness stand he denies that they were brothers. The admitted statement or deposition shows that this witness did not state in his original examination that the defendant had said that he had been attacked and threatened by a *machete* in the hands of the deceased. At no point in his testimony, strangely enough, was the witness Aurelio Rodríguez asked to explain this supposed contradiction.

Aurelio Cordero was the one who was asked whether he had made a contradictory statement in regard to what the defendant told him. The witness was under the impression that he had made the same statement to the *fiscal* that he made at the trial. However, when his deposition is examined it turns out that he was not asked what the defendant had said, and his deposition is completely silent on the subject.

So that we have the spectacle of two depositions presented in evidence, neither of which shows any contradiction on any matter about which either of the witnesses was asked to explain at the trial.

There was another witness who testified more or less in the same way, namely, that the defendant had acted in self-defense or had said that he so acted. Thereupon the *fiscal* laid or attempted to lay a foundation for contradicting him, but no contradictory testimony was ever offered in evidence in regard to this particular witness. The attempted contra-

dictory evidence was exclusively with regard to the other two witnesses to whom we have referred.

The *fiscal* of this court concedes that the admission of these statements was erroneous and draws attention to section 243 of the Code of Criminal Procedure, as follows:

"The party producing a witness is not allowed to impeach his credit by evidence of bad character; but he may contradict him by other evidence, and may also show that he has made at other times statements inconsistent with his present testimony."

More particularly section 245 says:

"A witness may also be impeached by evidence that he has made at other times statements inconsistent with his present testimony; but before this can be done the statements must be related to him, with the circumstances of time, places, and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. If the statements be in writing, they must be shown to the witness before any question is put to him concerning them."

Similar provisions of laws are contained in the Law of Evidence, sections 156 and 159.

That the witness must be given an opportunity to explain his contradictory statements is clear from all the jurisprudence, and more particularly the case of *People* v. *Santiago*, 16 P.R.R. 446. Without such foundation by way of preliminary examination, these depositions were totally inadmissible. This we have made clear in the case of *People* v. *Rojas*, 16 P.R.R. 238, and other cases. There we said:

"The purpose of aforesaid section 243 is to prevent the State from being surprised and to permit it to contradict or neutralize the testimony of a witness who is wholly or partly adverse. If a witness makes statements hostile to a defendant at a trial the latter has an opportunity to cross-examine him. But if his statements made at another occasion are introduced for the purpose of proving some essential element of a crime the defendant is deprived of such an opportunity. Such practice is in opposition to the fourth subdivision of section 11 of the Code of Criminal Procedure providing that in a

criminal action the defendant is entitled 'to be confronted with the witnesses against him in the presence of the court, except that where the charge has been preliminarily examined before a prosecuting attorney or a justice of the peace; or where the testimony of a witness on the part of the people, who is unable to give security for his appearance, has been taken in the presence of the defendant who has, either in person or by counsel, cross-examined or had an opportunity to cross-examine the witness, the deposition of such witness may be read, upon its being satisfactorily shown to the court that he is dead or insane, or cannot with due diligence be found within Porto Rico.' "

Since 1917 section 2 of the Organic Act has provided, among other things, that in all criminal prosecutions the accused shall enjoy the right to be confronted with the witnesses against him. Before the Organic Act was passed we had a similar provision in section 11 of the Revised Statutes of 1902. Confrontation in its main aspect is merely another term for the test of cross-examination. 12 C. J. 488, par. 34, Second Wigmore on Evidence, 1365.

"This right has always been deemed one of the most valuable safeguards of the citizen. It protects him against the peril of conviction by means of ex parte testimony or affidavits given in his absence, or when he has not the right of cross-examination." 8 R.C.L. 85, *et seq.*

See also *People* v. *Colón,* 25 P.R.R. 586; *People* v. *Ríos,* 34 P.R.R. 519; *People* v. *Maldonado,* 17 P.R.R. 22.

In reversing a judgment of conviction of murder where the state was permitted to use an *ex parte* affidavit, in *Commonwealth* v. *Zorambo,* 205 Pa. 109, 55 Atl. 716, the court said:

"Neither an ex parte affidavit nor a deposition regularly taken can be substituted with us for testimony face to face in any criminal prosecution."

In *State* v. *Patton,* 164 S. W. 226, the court very picturesquely said:

"It would be tantamount to offering both the witness himself and the deposition of the witness taken ex parte out of the presence and

hearing of the defendant, etc., * * * and so making, by indirection, two witnesses to grow where only one grew before.''

While perhaps the objection was not specifically put upon that ground, the statements of these witnesses were merely hearsay evidence. Not even the stenographer was called to identify the statements at the time they were introduced, although the record shows that the *fiscal* introduced the stenographer later. The *fiscal* also drew our attention to the fact that these written statements were taken not before the *fiscal* in his capacity as a magistrate, but before the municipal judge.

It has been suggested that the action of the court in admitting these declarations of Aurelio Rodríguez and Aurelio Cordero, taken before the municipal judge, did not really prejudice the defendant. There is no question that the said declarations were improperly admitted in evidence. In fact, as we have seen, the contradiction contained in these documents was very slight. In the one case the witness was only asked about his relationship with the defendant; in the other case the witness was not at all cross-examined with respect to the points wherein a supposed contradiction was to be found in the statements previously made before the municipal judge on questions directed to him by the *fiscal*. However, these declarations were offered by the *fiscal* and admitted by the court upon the sole theory of discrediting the statements of the witnesses and of showing that they had made contradictory statements. They were offered with a flourish, with the attempt to show that the witnesses had in fact committed perjury. The jury were present. The offer of the *fiscal* and the action of the court were strong circumstances from which the jury had a right to infer that the said two witnesses were not telling the truth. We have drawn attention to the fact that no attempt was made to contradict one of the government witnesses who testified in the same way, yet he was more particularly cross-examined

as to contradictory statements than either of the other witnesses, and the total effect on the jury would be that none of the witnesses who had given testimony favorable to the theory of self-defense was to be believed. As we have indicated before in the case of *People* v. *Ramírez de Arellano*, 25 P.R.R. 243, if this offered evidence was innocent and harmless, why did the district attorney insist upon getting it in? He must have had the distinct purpose of prejudicing the defendant's case or of bolstering his own by making the offer he did, which the court accepted. If a practice of this sort is to be tolerated, then the provisions of section 245 of the Code of Criminal Procedure, in effect, become a dead letter. Then, before a witness may be impeached it is not necessary that the "statements must be related to him, with the circumstances of time, places, and persons present, and he must be asked whether he made such statements, and if so, allowed to explain." The district attorney evidently thought that he was helping his case and prejudicing the defendant by offering this statement in evidence, and that necessarily was the effect on the jury if the case turned at all upon the statements of the three witnesses we have considered.

Under the head of Appeal and Error in 2 R.C.L. 235, par. 196, we find the following:

"In case of error occurring in the course of a trial the authorities are in conflict regarding the presumption as to the effect of such error. According to what seems to be the prevailing rule, the reviewing court will presume that such error was prejudicial unless the record shows the contrary."

In the notes cases are cited from the Supreme Court of the United States and from the Supreme Court of California. A number of the cases are civil cases, but, if anything, the presumption of error is stronger in a criminal case where a defendant must be convicted beyond a reasonable doubt. It is not necessary for us in Porto Rico to take any very

definite stand upon the matter until it has been a little more thoroughly threshed out by counsel.

In this case we think that not only has the government failed to show that there was no prejudice, but the record shows actual prejudice. The *fiscal* of this court, far from asking that the judgment be affirmed, points out that the case should be reversed.

We can not agree with the appellant that the evidence did not tend to show a crime, but we feel bound to hold that the admission of these statements was error prejudicial to the defendant inasmuch as they tended in the manner presented to cast strong doubts on the statements of the witnesses who gave testimony in favor of self-defense and, it must always be remembered, were called by the *fiscal*.

The appellant also complained that the court erred in fixing the maximum penalty of ten years. However, if the defendant was guilty of voluntary manslaughter, he made his attack in such a vicious fashion that we are convinced that the court was justified in fixing the extreme penalty.

The judgment must be reversed and the case sent back for a new trial.

Mr. Chief Justice Del Toro dissented.

### DISSENTING OPINION OF MR. CHIEF JUSTICE DEL TORO.

I dissent from the opinion of the majority. In my judgment the admission of the written testimony of witnesses Aurelio Cordero and Aurelio Rodríguez was erroneous, but the error committed was not prejudicial to the defendant and therefore it does not justify the reversal of the judgment appealed from.

The admission of the testimony was after the prosecuting attorney had fully examined and cross-examined the witnesses in regard to the contradiction between the present testimony and that previously given before that officer. The witnesses answered and explained. They insisted that they had given the same testimony on both occasions. It was then

the opportunity for the defense to step in if the examination was not being conducted in legal form and if the witnesses were not shown their written testimony, and request them to explain away the contradiction. The record shows that he only did it on one occasion, but that after the judge had given certain explanations he apparently was satisfied and took no exception.

That means that if any prejudice was caused to the defendant it was at the first moment and he can not complain because his attorney took no exception.

It is sufficient to see the manner in which the exception was finally taken in order to conclude that the attorney for the defendant objected on the only ground of the correctness of the proceedings, and not because he apprehended any prejudice against the defendant. His attitude is perfectly clear. A reading of the written testimony shows that it does not prejudice but favors the defendant.

It may be stated from a careful examination of the evidence that the final admission of the testimony had no influence on the verdict. The jury could give full credence to the testimony of the two Aurelios and yet find the defendant guilty, not only of manslaughter but of murder. The jury could admit the existence of a struggle at the beginning of the encounter and yet conclude by virtue of the examination of the body of Laureano González made by Dr. Fiol that it was a case of justifiable death.

The doctor made a *post mortem* examination of the body of Laureano González, the person whom the defendant killed, and found on his body three knife wounds and eight bullet wounds, five of which showed where bullets went in and two where they left the body. The doctor said that ''he had,'' referring to the firearm wounds, ''an orifice of entry on the right brachial region with an orifice of departure in the right armpit; there was another on the chest, which went through the heart, with no orifice of departure; he had

another on the other side of the chest, the right side, that left the back on the left, and there was one bullet that entered the back and left by the front.'' And later, on examination by the defendant's attorney in regard to the position of the defendant and of his adversary when inflicting on him the last of the wounds described, he said:

''Always from behind, the aggressor behind and the victim in front, if he shot him standing up, but if he shot him on the ground no matter the position, he might have fired being forwards or backwards, from the head or from the feet.

''If he struck him standing up he did so from behind, and if on the ground, a man on the ground is not in front or behind but on the ground.

''Of course, or from behind also, this man stood behind and shot him while on the ground, either he shot him in the back while on the ground, or if standing up from behind.''

The defendant did not receive any wound. At the trial he testified at length. His testimony on this point in answer to questions from the prosecution is as follows:

''Q. You say that he began to attack you with the machete? A. Yes, Sir. Q. Did he wound you? A. I did not notice, because after I saw him lying . . . . . Q. Again, did he wound you? A. No, Sir.''

That being so, in furtherance of justice and as I do not see anything to show that the defendant had not been tried by an impartial jury, in harmony with the spirit governing the law relating to the reversal of judgments in criminal cases approved in 1904 and amended in 1905, Comp. 1911 p. 1001, I am of the opinion that the judgment should be affirmed.