## Commonwealth *v.* Zorambo, Appellant.

*Criminal law—Murder—Silence—Duty to speak—Judicial inquiry—Evidence.*

While it is true, as a rule, that, when one charged with a crime is at full liberty to speak, but remains silent and makes no denial of the accusation by word or gesture, his silence is a circumstance to be taken into consideration by the jury, it is equally true that an accused at a judicial inquiry into his guilt may hold his peace in the face of an accusation against him, and his silence cannot be regarded as any, not even the slightest, evidence of his guilt.

At a hearing before a magistrate two persons, neither of whom could speak English, were charged with murder. After the witnesses for the commonwealth had testified, one of the prisoners said that he desired to make a statement. He was warned by the district attorney through an interpreter not to speak, as any statement he would make might be used against him. The prisoner, however, made a sworn statement exculpating himself and charging the other prisoner with the crime. The latter sat silent at the time, but on the following day denied the truth of the statement. The evidence was doubtful as to whether the hearing was at an end when the statement was made. At the trial the statement was offered as evidence of the prisoner's guilt, first because he had not spoken and denied the statement when it was made, and secondly, because on the day following, he had declared it to be false. *Held*, that it was error to admit the offer as circumstantial evidence against the prisoner.

Neither an ex parte affidavit nor a deposition regularly taken can be substituted for testimony " face to face " in any criminal prosecution.

Argued Jan. 5, 1903. Appeal, No. 321, Jan. T., 1903, by defendant, from judgment of O. & T., Luzerne Co., April T., 1902, No. 102, on verdict of guilty of murder of the first degree in case of Commonwealth v. Victor Zorambo. Before MITCH-

ELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.   Reversed.

Indictment for murder.   Before LYNCH, J.
The facts are stated in the opinion of the Supreme Court.
Verdict of guilty of murder in the first degree.

*Error assigned* was "in admitting in evidence the stenographer's notes of Lenousky's statement in the magistrate's office."

*R. Nelson Bennett* and *Evan C. Jones*, for appellant.—The statement of Lenousky was improperly admitted in evidence, because it was made at the magistrate's office in the course of a judicial inquiry: Rex v. Appleby, 3 Starkie, 33; Ettinger v. Com., 98 Pa. 338; Wharton's Criminal Evidence, sec. 680; Commonwealth v. Harman, 4 Pa. 269; Underhill's Criminal Evidence, sec. 122; Kelley v. People, 55 N. Y. 565; People v.. Willett, 92 N. Y. 29; People v. Koerner, 154 N. Y. 355 (48 N. E. Repr. 730); Commonwealth v. Kenney, 53 Mass. 233; Drury v. Hervey, 126 Mass. 519; State v. Boyle, 13 R. I. 537; Pierce v. Pierce, 66 Vt. 369 (29 Atl. Repr. 364); State v. Mullins, 101 Mo. 514 (14 S. W. Repr. 625); Fulcher v. State, 28 Texas App. 465 (13 S. W. Repr. 750).

The circumstances were such that Zorambo was not at full liberty to speak.

If a confession is inadmissible because the accused was not cautioned, or because he was under duress, his silence ought, in like circumstances, to be refused: Fulcher v. State, 28 Texas App..465 (13 S. W. Repr. 750).

The statement of Lenousky was clearly inadmissible because the circumstances "were calculated to produce on the mind of the prisoner the same influence at the latter period as existed at the first:" Com. v. Harman, 4 Pa. 269; Com. v. Kenney, 53 Mass. 233; People v. Willett, 92 N. Y. 29.

Except in those cases when the statements are made upon an occasion and under circumstances in which the individual sought to be affected could not properly speak, as in the progress of a judicial investigation, or in a discussion between third persons not addressed to the accused, so that for him to speak would be a manifest intrusion into a discourse to which he was

not a party, the evidence is competent and should be admitted: Kelley v. People, 55 N. Y. 565; Drury v. Hervey, 126 Mass. 519; State v. Mullins, 101 Mo. 514 (14 S. W. Repr. 625).

*B. R. Jones,* district attorney, for appellee.—The statement was properly admitted:    Kelley v. People, 55 N. Y. 565; Com. v. Clark, 130 Pa. 641.

OPINION BY MR. JUSTICE BROWN, February 2, 1903:

The appellant and Peter Lenousky were charged jointly with the murder of Anthony Sennick.   Both are foreigners, speaking their own language and not understanding ours.   They were arrested within a few hours from the commission of the crime and shortly afterwards given a hearing before a magistrate, who committed them for trial.   At the hearing there was present, among other officers of the law, an assistant district attorney, with his stenographer and an interpreter.   While in the magistrate's office Lenousky said he wished to make a statement.   He was immediately warned by the assistant district attorney not to speak, as any statement he would make might be used against him on his trial in court.   He persisted, however, in making a statement, and, after having been sworn by the magistrate, proceeded to give in detail a confession which he alleged Zorambo had made to him of his guilt alone of the crime charged against them both.   This alleged confession implicated no one but Zorambo, and the statement made by Lenousky was manifestly for the purpose of exculpating himself, who has since been also convicted of the wilful murder of Sennick.   The statement was taken down by the stenographer as interpreted to him by the interpreter.   Zorambo sat still and made no reply to the accusation of his confederate in the crime.

It is not disputed by the commonwealth that, when Lenousky was warned by the assistant district attorney, through an interpreter, not to make any statement, Zorambo heard and understood what was said.   On his trial, this statement of Lenousky, as taken down by the stenographer—practically a deposition by him—was offered by the commonwealth as evidence of the prisoner's guilt, first, because he had not spoken and denied the accusation when Lenousky made it before the magistrate, and, secondly, because, on the day following, when his attention was

called to it, he had declared it to be false. At the time the offer was made it was objected to, for the reason that the statement " was made during a legal proceeding when the accused had no right to speak, or at least was not bound to speak." This objection was overruled by the learned trial judge and the offer admitted, for the reason, as given by him, that the statement " was made after the proceeding had ended before the magistrate." The single error assigned is, that " the court erred in admitting in evidence the stenographer's notes of Lenousky's statement made in the magistrate's office."

It is by no means certain that the hearing was over at the time Lenousky made his statement, though the magistrate testified that it was, and the assistant district attorney corroborates him to a certain extent. The latter, on his examination in chief by the commonwealth, said : " I think he made it after the hearing ; " but, on cross-examination, the following occurred : " Q. The commonwealth had rested its case ? A. We called all the witnesses that were subpœnaed. Q. That you had ? A. Yes, sir. Q. Then you suddenly discovered you had another witness ? A. No, sir ; he volunteered this statement himself. Q. Then you discovered you had another witness ? A. Well, yes, after we heard this statement." If the hearing was not over, the silence of Zorambo and his failure to deny Lenousky's accusation could not be used against him. While it is true, as a rule, that, when one charged with a crime is at full liberty to speak, but remains silent and makes no denial of the accusation by word or gesture, his silence is a circumstance to be taken into consideration by the jury, it is equally true that an accused at a judicial inquiry into his guilt may hold his peace in the face of any accusation against him, and his silence cannot be regarded as any, not even the slightest, evidence of his guilt : Ettinger v. Commonwealth, 98 Pa. 338 ; Underhill's Criminal Evidence, sec. 122 ; Wharton's Criminal Evidence, sec. 680 ; Commonwealth v. Kenney, 12 Metcalf, 235. Assuming, as the learned trial judge did, that the hearing, as a matter of fact, was over and that the officers of the law who were present so understood the situation, and felt there was nothing more for the magistrate to do but to commit the prisoners, the question to be determined in deciding whether Zorambo's silence under the accusation of Lenou-

sky ought to have been left to the jury as a circumstance against him, is, did he know the hearing was over, or had he reason to believe that the judicial inquiry was still going on? If to him the proceedings before the magistrate had not ended, but were apparently still in progress, no tongue that he could understand having told him they were over, he could be silent before his accuser, and his silence could no more be afterwards used against him than if he had been silent when the hearing had been actually taking place. In the absence of proof that he knew it was over, the only fair conclusion to be drawn which is consistent with his rights is, that he must have thought it was still going on. It is to be assumed that, though a foreigner, speaking and understanding a strange language, he knew he was taken with Lenousky before the magistrate for a hearing. It is further to be assumed that, except when witnesses not understanding English were being examined, the proceedings were conducted in that language, of which he knew nothing. He was not represented by counsel, who might have explained everything to him. When Lenousky insisted upon making a statement, not a word was spoken to him indicating that the hearing was over; on the contrary, just as all prior witnesses had been sworn, so an oath or affirmation was administered to Lenousky, and, to all appearences, to the prisoner, who understood only what he saw, the hearing was still proceeding. The scene had not changed and was calculated to produce on his mind the same influence at the end as had existed all through: Commonwealth v. Harman, 4 Pa. 269. But a moment must have intervened between the examination of the last witness formally called by the prosecution and the making of the statement by Lenousky, which was not addressed to Zorambo, but made to the magistrate, and, in that brief interval, Zorambo, through the interpreter, heard and understood the warning given by the commonwealth's officer to Lenousky not to speak, which it can hardly be seriously contended he ought not to have regarded as applying to himself as well. He knew from the lips of authority that, if he spoke, whatever he said might be used against him on his trial for his life, and he heard the caution not to speak. That he kept silent was his right, as, at the time, he must have understood it, and

manifest error was committed in submitting his silence to the jury as circumstantial evidence against him.

That the prisoner, on the day following the hearing, declared Lenousky's statement to be untrue, is urged as a reason why it was properly admitted in evidence, because it showed what he had denied. The answer to this is, that Zorambo's denial of the truth of Lenousky's statement was consistent with his innocence; and, if simply because he denied what had been charged against him, the commonwealth ought to be allowed to offer in evidence the statement as to what he had denied, an ex parte affidavit of the most serious import, containing the gravest accusation and imperilling his life, would practically become evidence against him, for it would naturally be so considered by the jury, and the accused would be denied the right guaranteed him of meeting his witnesses "face to face," Declaration of Rights, art. 1, sec. 9, and of having his counsel cross-examine the accusing witness in his presence : Howser v. Commonwealth, 51 Pa. 332. Lenousky was in court during the trial, and could have been called by the commonwealth to bear witness against the accused "face to face," if he knew anything that the jury ought to have known from him connecting the accused with the crime charged. Neither an ex parte affidavit nor a deposition regularly taken can be substituted with us for testimony "face to face" in any criminal prosecution ; and the successful attempt of the commonwealth to do so in the present case, in which a human life is involved, calls for a reversal of the judgment.

Judgment reversed and a venire facias de novo awarded.