## Commonwealth *v.* Mazarella, Appellant.

*Criminal law—Murder—Evidence—Accomplice — Contradiction by witness of his own testimony in former trial.*

1. Where two men are jointly charged with the murder of the same man, and one of them at his own trial swears to his own innocence, but after his conviction and at the trial of the second prisoner, swears that he and the other prisoner were principals in the murder, the first prisoner is manifestly guilty of perjury, and the court commits reversible error if it excludes from the consideration of the jury his evidence at his own trial, which he admits in detail under cross-examination at the trial of his accomplice.

*Criminal law—Murder—Denial by prisoner of charges—Evidence.*

2. Statements made in the presence of a prisoner cannot be used as evidence against him unless he acquiesces in them affirmatively or by his silence when he should have spoken.

3. Where a prisoner on his way to jail on a murder charge, asserts that statements as to his guilt were "a lie fifty thousand times," and when the statements were repeated, the prisoner, after a pause of two or three minutes, used language and a gesture, which among his countrymen signified a solemn protestation of innocence, such statements are inadmissible at his subsequent trial, nor can

they be used as a subject of cross-examination when the prisoner is on the stand.

*Criminal law—Murder—Evidence—Other similar things—Alibi.*

4. Where a coal miner charged with murder produces evidence that he mined a certain number of cars during an afternoon and evening, it is proper to admit evidence to show that such amount of coal was mined by others on the same day in the same general section of the mine, this to show that the prisoner was in the mine in the evening, and not at the place of the killing.

*Criminal law—Murder—Evidence—Expert opinion.*

5. In a murder case an expert opinion is competent as to the cause of death, and it is equally so as to the inability at times to discover such cause.

*Criminal law—Murder—Possession of revolver—Other times—Independent offense.*

6. Where the prisoner denies a statement by a witness that he had in his possession a revolver at the time of the alleged homicide, and asserts that he never had such a weapon, the Commonwealth may offer proof that, on a former occasion, the prisoner had a revolver, but must exclude from such offer whatever might tend to show an independent offense.

*Criminal law — Murder — Evidence — Contents of decedent's stomach.*

7. At a murder trial it is not necessary that the contents of the stomach of the deceased, sent away for chemical analysis, be so identified as to preclude the possibility of doubt.

*Criminal law—Murder—Accomplice—Evidence.*

8. A person who does nothing more than fail to report an alleged murder, is neither an accomplice nor an accessory after the fact.

*Criminal law—Murder—Conduct of district attorney.*

9. On a murder trial the prosecuting attorney should keep in mind that he is a judge advocate and must take no unfair advantage of defendant.

Argued January 15, 1924. Appeal, No. 22, Oct. T., 1924, by defendant, from judgment of O. & T., Jefferson Co., Aug. T., 1922, No. 1, on verdict of guilty of murder of the first degree, in case of Commonwealth v. Vincenzo Mazarella. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Indictment for murder. Before Corbet, J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were various rulings and instructions, appearing by the opinion of the Supreme Court, quoting record.

*James A. Gleason,* with him *Cadmus Z. Gordon, Jr.,* and *Jessie C. Long,* for appellant.—The court erred in permitting the Commonwealth to prove that defendant committed a separate, distinct and unconnected crime from that charged in the indictment: Ott v. Jordan, 116 Pa. 218; Goersen v. Com., 99 Pa. 388; Com. v. Haines, 257 Pa. 295; Swan v. Com., 104 Pa. 218.

Defendant contends that the officers who removed him from the jail to the sheriff's residence perpetrated a gross outrage on him and any information drawn by it or subsequently given on its basis is inadmissible: Com. v. Brines, 29 Pa. Dist. R. 1091.

The learned court erred in admitting the testimony of Detective Peter D. Spinelli, Sheriff S. G. Lowry, and State Policeman John Doba, referring to the alleged silence of the defendant, James Mazarella, when accused of participation, by Jim Puglise, in the alleged killing of Sylvester Carlisi: Com. v. DePalma, 268 Pa. 25; Com. v. Johnson, 213 Pa. 607; Com. v. Zorambo, 205 Pa. 109.

Any jury who believed its duty was to follow the instructions of the court, would have found defendant guilty after hearing the comment on the testimony of Jim Puglise: Lingle v. Ry., 214 Pa. 500.

*Charles J. Margiotti,* Assistant District Attorney, with him *Walter E. Morris,* District Attorney, and *Raymond E. Brown,* for appellee.—The Commonwealth did not introduce evidence showing the commission by the

defendant of a separate and distinct and unconnected crime other than that charged in the indictment: Com. v. Emery, 273 Pa. 517; Com. v. Blank, 79 Pa. Superior Ct. 49.

A self-serving declaration of defendant was inadmissible. The Commonwealth did not compel defendant to give evidence against himself.

Defendant being charged by his accomplice with the killing of decedent and being at full liberty to speak, remained silent and made no denial of the accusation, either by word or gesture for a period of two or three minutes, the silence being broken by inquiry of an officer by what he had to say, to which defendant replied in terms having a dual meaning, one that he was innocent, and the other that "God only knew" was a circumstance to be taken into consideration by the jury: Com. v. Spardute, 278 Pa. 37; Com. v. Zambro, 205 Pa. 109.

OPINION BY MR. JUSTICE WALLING, February 18, 1924:

On the morning of February 24, 1922, the dead body of Sylvester Carlisi, a coal miner, was discovered at Florence, Jefferson County, in the back yard of James Puglise. There was a small rope around the neck by which the body was suspended from the limb of an apple tree with the knees touching the ground. Some eighteen days thereafter Puglise and Vincenzo Mazarella, the defendant, were arrested and jointly charged with the murder of Carlisi. They were tried separately and Puglise was twice convicted of first degree murder; his first conviction having been set aside by this court in Com. v. Puglise, 276 Pa. 235. After his second conviction Mazarella, herein called the defendant, was tried and convicted of murder of the first degree, and, from sentence imposed thereon, brought this appeal.

A careful examination of the record discloses errors which call for reversal. Puglise on each trial of his own case testifies in effect that he was entirely innocent and had no knowledge as to the death of Carlisi; he also

made an affidavit of like import and filed the same in this
court in connection with his appeal; but, when called
as a witness for the Commonwealth at the trial from
which the present appeal was taken, testified to an en-
tirely different state of facts implicating himself and
Mazarella as principals in the murder, placing the major
responsibility upon the latter.    In view of this glaringly
inconsistent testimony the defendant submitted a re-
quest for charge as follows: "Perjury is a wilful false
oath taken in a judicial proceeding, and under the testi-
mony of Jim Puglise he is an admitted perjurer since his
testimony under oath at this trial is in direct conflict with
his oath on the same material subject-matter at former
trials in this court, and, therefore, the jury will be war-
ranted in disregarding and throwing out his entire testi-
mony where such contradiction prevails.    Answer: Jim
Puglise stated his testimony in this case to be the truth.
The alleged 'former trials in this court,' with parties and
issues, are not in evidence in the present case, and there-
fore cannot be looked into.    The point is not founded on
the theory of any wilful, absolute, and false swearing in
the present case?    We cannot give our approval to the
theory on which it is founded, and therefore, as well for
other reasons, the point is refused."    While the request
might well have been refused the answer was error; for
manifestly Puglise had committed perjury either at the
trials of his own case or of the instant case.    His credi-
bility was therefore seriously impaired by the fact of
such perjury and it was the right and duty of the jury
to consider the testimony of this witness, given in the
former trials, as affecting his testimony here.    Puglise on
cross-examination admitted in detail the tenor of his
former testimony; so it was upon the record in this case.
The same is true as to Puglise's wife, whose testimony,
so far as she claimed to have knowledge, followed that of
her husband on each of the three trials.    Puglise was
further discredited by the fact that he stood before this
jury as a convicted murderer, and by his testimony an

accomplice of the defendant. The trial judge, however, gave the jury proper caution as to the testimony of an accomplice.

Peter Spinelli, county detective, investigated the death of Carlisi and with other officers arrested the defendant on the morning of March 14, 1922, at his home in Florence; at which time the latter denied any knowledge of or complicity in the death of Carlisi. This denial was repeated on the road to jail; and, later the same day, when Spinelli told him he had been implicated in the murder by a statement of Puglise and explained to him the contents thereof, defendant replied that such statement "was a lie fifty thousand times." Puglise was brought in at once and reiterated the statement; then, after a pause, estimated at two or three minutes, Spinelli asked defendant what he had to say, whereupon the latter raised his hand and said, "Christo la sape," which words literally mean, "God knows," but when used in connection with raising the hand are understood in that part of Italy from which Spinella and defendant came as a solemn protestation of innocence. Permitting the Commonwealth to prove this conversation and refusing to strike out such proof was error. Statements made in the presence of a defendant cannot be used as evidence against him unless he acquiesced in them affirmatively or by his silence when he should have spoken. Here the fact that defendant did not immediately, and before being asked, again deny the statements is of no significance. He had just told the same officer, Spinelli, who informed him of what Puglise said, that it was "a lie fifty thousand times," and was not bound to repeat it: People v. Collins, 234 N. Y. 365, 137 N. E. 753; Underhill's Criminal Evidence (3d ed.), p. 297. Again, Puglise did not speak there until asked, and defendant would naturally do the same. It cannot be said defendant acquiesced in what he emphatically and repeatedly denied. In the face of such denial the statements could not be offered in evidence (Com. v. Johnson, 213 Pa. 607;

Com. v. Zorambo, 205 Pa. 109), nor could the defendant be cross-examined with reference thereto. On this feature of the case defendant submitted a request as follows: "The alleged silence on the part of the defendant at the time James Puglise is alleged to have made a statement to Peter Spinelli in the presence and hearing of James Mazarella in the county jail was no admission of guilt on the part of James Mazarella under the circumstances as detailed by Peter Spinelli. Answer: Whether or not it was an admission of guilt is a matter of fact to be determined by the jury under all the testimony relating to it, as is also the meaning of the declaration or answer of James Mazarella made at that time." The evidence here referred to having been inadvertently admitted, the request should have been affirmed. The answer allowing the jury to find that what took place on that occasion amounted to an admission of guilt was error. While there was a conflict among the witnesses as to whether the defendant shook his head when he raised his hand and spoke the words, "Christo la sape," that fact was not important; as there was no dispute that in their native land the raising of the hand and speaking the words was a declaration of innocence.

Puglise's evidence was that the crime was committed at about eight o'clock p. m. Defendant was a miner working night shifts, which usually extended from approximately two to ten o'clock p. m., and he offered evidence tending to show that on the evening in question (February 23, 1922) he worked in a coal mine, over a mile from Puglise's home, until nearly ten o'clock, and it was shown that he and his buddy mined and loaded nine cars of coal during that afternoon and evening; in connection therewith, defendant offered to show the amount mined by others on the same day in the same general section of the mine. This might have thrown light on the question of whether defendant was at work that evening and should have been admitted, subject of course to any relevant explanation.

It may be proper to mention some other questions found in the record.

In the case of Com. v. Puglise, supra, and in Com. v. Crossmire, 156 Pa. 304, we hold expert opinion competent as to the cause of death, and it is equally so as to the inability at times to discover such cause.

Puglise testified that at the time of the alleged homicide defendant was armed with a black handled revolver; therefore, in answer to the latter's denial of ever having had such a weapon, it was competent for the Commonwealth to offer proof that on a former occasion he had such a revolver in his possession; but excluding therefrom whatever might tend to show an independent offense. See Com. v. Gibson, 275 Pa. 338; Com. v. Haines, 257 Pa. 289.

It is not necessary that the contents of a deceased's stomach sent away for chemical analysis be so identified as to preclude the possibility of a doubt (30 C. J. 220) and in our opinion the trial judge did not err in admitting in evidence the result of such analysis in the instant case; although the identification would have been more complete had Dr. Narr, to whom the package was addressed, been called as a witness.

There was no proof that Mrs. Puglise did more than fail to report the alleged offense; hence, the trial judge properly held she was neither an accomplice of the defendant nor an accessory after the fact. See Com. v. Loomis, 267 Pa. 438.

As the case is reversed on other grounds it is unnecessary to pass upon the complaint of the conduct of counsel; however, we suggest that at the retrial the able counsel for the Commonwealth keep better in mind the fact that he is a judge advocate (Com. v. Bubnis, 197 Pa. 542) and must take no unfair advantage of the defendant.

As the testimony of Mr. and Mrs. Puglise came from a discredited source it should be very carefully scrutinized, as it also should because it came from an inter-

ested source. The dead body of Carlisi having been found in Puglise's yard, it was natural for both him and his wife to wish to place the blame upon some one else. Their evidence should also be carefully scrutinized, and, unless credited, there is nothing in the record to justify a conviction. According to our understanding, when the body was found and for more than two weeks thereafter Mr. and Mrs. Puglise, while admitting Carlisi spent the evening at their home, denied all knowledge of his death; then they told the story substantially as given on the trial of the instant case, but meantime they had repudiated it at the trials of Puglise.

There is nothing in the other numerous assignments of error which seems to call for discussion.

For the reasons above given the judgment is reversed and a venire facias de novo awarded.