Commonwealth v. Smith, Appellant.

498

Argued March 15, 1932.

Before TREXLER, P. J.,
KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD
and PARKER, JJ.

*Alvin L. Little,* and with him *Harry W. Petrikin,* for
appellant.

*J. Colvin Wright,* and with him *Horace Michener
Schell* and *R. W. Lins,* District Attorney, for appellee.

OPINION BY PARKER, J., July 14, 1932:

It was alleged in the information filed in this case,
dated March 13, 1931, that Molly K. Smith caused a
building in the Borough of Everett, occupied as a
restaurant and residence to be burned on November

8, 1930, "by counselling and procuring the aid and hiring one Thomas M. Fisher to set fire to and burn and destroy" the said building. Thereafter, she was indicted, tried and convicted of arson.

Thomas M. Fisher was first apprehended and taken by a private detective and two state troopers to the barracks at Huntingdon, Pennsylvania, where there was obtained from him a full confession in which he stated among other things that Molly Smith procured him to burn the building and paid him $1,000 for his services. In the confession there were many other allegations damaging to the defendant. On the following day and after the making of the information, the defendant, Molly K. Smith, was taken with the said Thomas M. Fisher by the private detective and state troopers to the barracks when, in the presence of one of the troopers, the detective and Fisher, the confession was read aloud to her. There was some dispute with relation to her reaction to the reading of the confession. The detective and one of the troopers testified as to the conduct of defendant at that time. The confession of the accomplice was offered and received in evidence. The court in overruling the objection said: "That is all a matter for the jury to determine whether she sat silent and from her silence to it, whether the statement is true." This is the basis of the sixth assignment of error. This ruling of the court raises the only question pressed on this appeal.

Testimony was given by the detective and state policeman for the purpose of showing that the confession of Fisher was read to the defendant and that thereupon she remained silent from which the jury would be asked to find that she admitted the charges contained in such confession. The purport of this evidence with reference to what transpired in the presence of the defendant at the barracks was to the effect that the confession was read aloud, that there was silence for a moment when the detective questioned

the alleged accomplice, Fisher, as to the details—
"analyzing the high spots,"—that Fisher reiterated
the truth of the facts set forth in the writing, that the
defendant, Molly Smith, asked if the matter could be
settled out of court, that Bryant, the detective, asked
defendant if she would make a statement and she said
she would if she could trust the witness. During this
same conversation and between five and fifteen minutes
after the reading was finished, Mrs. Smith said Fisher
was a rat and a liar, emphasizing the reply with a
strong oath. The witness Bryant also stated that she
used other strong language which he did not repeat.

The two witnesses having completed their testimony,
the confession was received in evidence over the ob-
jection of the defendant. This, in our opinion, was
error. In Ettinger v. Com., 98 Pa. 338, 345 the Su-
preme Court quotes with approval the following:
"When a man at full liberty to speak and not in the
course of a judicial inquiry, is charged with a crime
and remains silent, that is, makes no denial of the
accusation by word or gesture, his silence is a circum-
stance which may be left to the jury." Upon this
same principle, the confession of an accomplice has
frequently been received in evidence against a co-
defendant to whom the confession was read and where
he remained silent. See Com. v. Ballon, 229 Pa. 323,
327; Com. v. Carelli, 281 Pa. 602, 604; Com. v. Epps,
298 Pa. 377, 380.

"Statements made in the presence of one accused of
crime can be put in evidence against him only when
his silence under the circumstances is ground for the
inference of his assent to their correctness. The state-
ments offered by the Commonwealth, having been
promptly and explicitly denied, could not be received
as tending to show an admission by the appellant":
Com. v. Johnson, 213 Pa. 607, 608. This principle is
recognized also in the case of Com. v. Mazarella, 279
Pa. 465, 470 and Com. v. Sydlosky, 305 Pa. 406, 411.

It will be noted that the complaint of the appellant is not directed to the admission in evidence of testimony showing the reaction of the defendant to assertions charging her with a crime, but to the admission and reading of the confession of the alleged accomplice. It is at this precise point that the lower court fell into error. "The conduct or demeanor of a prisoner on being charged with the crime, or allusion being made to it, is frequently given in evidence against him": Com. v. Ford, 86 Pa. Superior Ct. 483, 486. It follows that when this defendant was charged with the crime, her inquiry as to whether the matter could be settled, the form of her agitation and in general her reaction or responses were competent evidence. The proposition here, however, is to admit the confession of the accomplice on the assumption that she verified its accuracy by her silence. Unless the defendant assented either by word or conduct to the accuracy and correctness of the confession of Fisher such evidence was hearsay.

It is undisputed that during this session between the detective, policeman, defendant and accomplice, the defendant said in very positive language in connection with the immediate matter in hand that the accomplice, Fisher, was a "damn liar." We cannot regard this reply as anything else than a denial of the truth of his assertion and at the very least it could not be described as an assent by silence to the accuracy of the statement he had made. When we take into account the fact that the defendant was under arrest, was taken by a professional detective and two state policemen, not to the office of a justice of the peace, but to the state barracks, it is not inconceivable that the defendant was, as she said, bewildered for a moment. Considerable is made by the Commonwealth of the fact that defendant did not make her denial until sometime after the confession was read, but it will be noted that the detective was engaged in examin-

ing the accomplice and it would be very natural for her to follow such examination with a listening ear. Comment is also made on the fact that the denial was not directed to any particular statements. The weakness of this contention is, however, apparent. The defendant was not called upon to reply to every item of the confession as would a pleader to a statement of claim. If her reply was only a general denial, it could not be construed as an assent by silence. Viewed in a light most favorable to the Commonwealth, it was a positive denial of the accuracy of some of his statements without specifying which were correct. The entire confession was received in evidence. The effect of this was to place before the jury very damaging testimony in the form of an ex parte affidavit. The accused was entitled to have such testimony given in open court "face to face" subject to cross examination. It appears that the accomplice Fisher was serving sentence and would be subject to subpoena. The remarks of Mr. Justice BROWN in the case of Commonwealth v. Zorambo, 205 Pa. 109, 114 apply to the present situation. In that case it was said: "Lenousky was in court during the trial, and could have been called by the Commonwealth to bear witness against the accused 'face to face,' if he knew anything that the jury ought to have known from him connecting the accused with the crime charged. Neither an ex parte affidavit nor a deposition regularly taken can be substituted with us for testimony 'face to face' in any criminal prosecution."

Judgment of the court is reversed and a venire facias de novo awarded.