## Commonwealth *v.* Karmendi, Appellant.

64

Argued November 23, 1936.   Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Frank J. Reiser, Sr.,* for appellant.

*R. J. Puderbaugh,* Assistant District Attorney, with him *Chester B. Wray,* District Attorney, for appellee.

OPINION BY MR. JUSTICE DREW, January 5, 1937:

The defendant, Margaret Karmendi, was jointly indicted with Roy Lockard for murder. She secured a separate trial which resulted in her conviction of the crime charged, in the first degree. The jury fixed the penalty at death. Judgment was entered and sentence imposed accordingly; from this action of the trial court this appeal was taken.

Most of the facts relevant here are recounted in *Commonwealth v. Lockard,* 325 Pa. 56. A few should be added. On April 22, 1936, the day after the crime, an officer called on defendant at her house, but she told him no more than that a car struck the child. Later in the same day she was taken to the Altoona City Hall where she insisted on the same story, which, at trial, she testified was given her by Lockard with threats to her life if she should not tell it. At the City Hall, however, she relied on it until told that Lockard accused her of the crime. Then she said Lockard killed the child with a spike he took from his pocket, and that she knew nothing of his intention to do it.

Lockard accused her of conceiving and discussing with him the design to wait for a passing car, of carrying the spike and of striking the victim at least once. She confronted him, denied this and charged him with being the sole perpetrator.

Weeks later she called an assistant district attorney to the jail and told him that the first account about the hit-and-run motorist was the correct one. At trial, however, she again sought to lay the whole crime to Lockard,

who, already sentenced to death, testified for her and assumed all responsibility. He was contradicted by a former statement in which he confessed only a share of the blame.

A new trial must be granted because of trial errors. When cross-examined by counsel for the Commonwealth the witness, Lockard, was asked, over objection, the following question:

"Q. You sat over at that table and heard your counsel, Mr. Warfel, argue to the jury to be merciful to you but to get Margaret Karmendi—that she was the master mind; that she was the criminal? You heard that?

"A. Yes."

The overruling of objection to this was assigned below as a reason for a new trial and the same allegation of error has been preserved on this appeal in the sixteenth specification. We think the objection made below ought to have been sustained for several reasons.

Since Lockard's counsel also represented defendant in the trial of the present case, it is especially likely that this question and answer, disclosing the defense argument in the Lockard trial, was most injurious to the defendant here in the eyes of her jury. To point out such an inconsistency in counsel's position must have caused the laymen who were her jurors to look with suspicion upon her case and must have deprived her counsel's closing argument of whatever persuasive force it might otherwise have had. Yet it must have been known to the prosecution, as it is to the profession generally, that inconsistent arguments are legitimate advocacy so long as they are reasonable versions of the evidence,* and that what an advocate does apart from his client's case is not evidence in it.

Furthermore the question was entirely incompetent even for the purpose of impeaching Lockard's testimony

---

* Cf. Trial of Courvoisier, 1 Townsend's Modern State Trials, 244, 313, advice of Baron Parke to Mr. Phillips, recounted in Warvelle, Legal Ethics [1902] 211.

exculpating the defendant. He, surely, did not prescribe the closing argument for his counsel. Nor is there a legal inference from what was then an apparent acquiescence in that argument. Former acquiescence in a statement now denied is not competent evidence when the former statement was made in the course of a judicial proceeding: *Commonwealth v. Zorambo*, 205 Pa. 109. Orderly procedure requires that everyone, including the defendant, await his turn to speak.

Nor should the Commonwealth have been allowed over objection to cross-examine defendant on her failure to offer to testify against Lockard. The inference thus suggested was irrelevant and prejudicial, and the prejudice was increased by the emphasis placed upon her failure to do so in the charge of the court. There is a settled principle that omission to speak and act when it would be natural so to do is competent evidence. With it we do not disagree, and it finds application in many of our cases. Thus failure to deny when accused of crime, not at a judicial proceeding, is evidence against the accused: *Ettinger v. Commonwealth*, 98 Pa. 338; *Commonwealth v. Aston*, 227 Pa. 112; *Commonwealth v. Detweiler*, 229 Pa. 304; *Commonwealth v. De Palma*, 268 Pa. 25; *Commonwealth v. Lisowski*, 274 Pa. 222. So also, after he has waived his privilege, is accused's refusal to testify in his own behalf at an earlier stage of the proceedings against him: *Commonwealth v. Smith*, 270 Pa. 583; *Raffel v. U. S.*, 271 U. S. 494. The fact that a witness had at first lodged a relatively minor charge against one he now accuses of murder arising from the same facts has been held competent discrediting evidence: *Snyder v. Commonwealth*, 85 Pa. 519. And in civil actions failure to bring suit on a claim is admissible to show that probably no claim exists: *Mullen v. Insurance Co.*, 182 Pa. 150.

But in applying the principle that runs through all these cases, patently different from this one, "much depends on the individual circumstances, and in all of

them the underlying test is, Would it have been natural for the person to make the assertion in question?": 2 Wigmore, Evidence (2d ed.), section 1042. The circumstances of the instant case are not of this order. For this defendant, under indictment for the most serious offense known to the law, condemned by the man indicted with her, seriously involved in an embarrassing chain of circumstantial evidence, to have offered on her own motion to take the stand against that man who she, if innocent, must have hoped would at last exculpate her, would have been most unwise.

Complaint is made of the temper and scope of the trial court's charge to the jury. There was elaborate comment in graphic terms on the evidence and inferences therefrom tending to indicate, on defendant's part, conduct inconsistent with innocence. The Commonwealth's closing argument was largely repeated in tenor and form appropriate only to that stage of the trial. But comment on defendant's evidence by comparison was strikingly inadequate. The charge also reveals by innuendo, if not forthright, the court's opinion that she was guilty, and was expressed in rhetoric which must have been a factor in moving the jury to the same opinion. This is not the proper function of a charge: *Commonwealth v. Myma*, 278 Pa. 505; *Commonwealth v. Trunk*, 311 Pa. 555; *Commonwealth v. Robinson*, 102 Pa. Superior Ct. 46. Nor can such excess of statement be cured by instructing the jury that it must exercise its own judgment. The effect of the language here used cannot, of course, be exactly measured, but we surely cannot say it did not materially prejudice defendant's cause.

Judgment is reversed, and a venire facias de novo is awarded.