Commonwealth *v.* Vallone, Appellant.

432

Argued November 16, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Russell C. Mauch,* with him *Milton J. Goodman,* for appellant.

*Irving W. Coleman,* Assistant District Attorney, with

him *Henry K. VanSickle,* District Attorney, for appellee.

OPINION BY KENWORTHEY, J., January 28, 1943:

Appellant was convicted of knowingly transporting a female for the purpose of prostitution. Act of June 24, 1939, P. L. 872 §517, 18 PS 4517. He concedes the evidence was sufficient to support the verdict. He seeks a new trial because of alleged errors in the admission of certain evidence and in the court's charge to the jury.

The commonwealth's evidence, with the exception of that which is alleged to have been inadmissible, consisted exclusively of the testimony of the prostitute. She testified that some time in April, 1941 appellant drove her in his car from Allentown to Scranton where he secured employment for her in a bawdy-house for which services he received a fee. It was conceded at the trial that the girl at the time was a confirmed prostitute and the charge that appellant had induced, enticed or compelled her to become a prostitute was dropped.

## I.

The court permitted the commonwealth to prove that some time after he was arrested, appellant was brought from the jail to the district attorney's office where in his presence and the presence of a state policeman, a local policeman, a county detective, and the district attorney's secretary who recorded the proceedings, the girl made a complete statement which substantially coincided with the testimony she gave at the trial. In the language of the assistant district attorney who tried the case this was offered "to prove by Mr. Cahalan's [the state policeman's] testimony under what circumstances the conversation was held, the circumstances surrounding it and the admissions made during the conversation by defendant;" with commendable candor, he stated at the oral argument in this court

that this meeting was staged for the purpose of procuring evidence against appellant.

At the meeting, appellant made no "admissions" of any kind and *all* the questions, with the insignificant exception that at the beginning of the proceedings appellant was asked whether he knew the girl, were addressed to her.

This proof was allowed because appellant sat through the meeting in silence, on the theory that the jury might infer, from his silence, that he assented to the truth of the statements.

The doctrine of assenting silence has its roots in the postulate that: "The crystallization of the experience of men shows it to be contrary to their nature and habits to permit statements tending to connect them with actions for which they may suffer punishment to be made in their presence without objection or denial by them *unless they are repressed by the fact that the statement is true.*" Wharton's Criminal Evidence (11th ed.) §656, p. 1092. (Italics supplied). This principle, in the original English tradition, was applied as a working rule that whatever was said in a party's presence was receivable against him as an admission because presumably assented to. Wigmore, Evidence (10th ed.) §1071, p. 70. But it is to be observed that in this simple and comprehensive form the rule ignores some inherent qualifications of the principle. There are multitudes of circumstances under which an accused person may be "repressed" other than "by the fact that the statement is true." The rule, to be sound in application to particular cases, must be critically examined in the light of the peculiar circumstances of each case by judges who assume somewhat the role of clinical psychologists. And that the courts have long recognized their responsibility is manifest from the early and numerous deliverances tending to dislodge or qualify it. Mr. Justice DUNCAN in *Moore v. Smith,* 14 S. & R. 388, 393, said: "Two men at this rate, might

talk a third out of his whole estate, with a witness! Nothing can be more dangerous than this kind of evidence. It should always be received with caution; ......" In *Vail v. Strong*, 10 Vt. 457, 464, it was said: "He has the right to be silent, unless there be good occasion for speaking. We cannot admit that he is bound to disclose his private affairs, at the suggestion of idle curiosity, whenever such curiosity is indulged, at the hazard of being concluded by every suggestion, which may be suffered to pass unanswered. The true rule we understand to be this;—evidence of this character may be permitted to go to the jury, whenever the occasion, upon which the declaration is made in the presence of the party, and the attendant circumstances, call for serious admission or denial on his part; but the strength of the evidence depends altogether upon the force of the circumstances and the motives, which must impel him to an explicit denial, if the statement be untrue. But if no good reason exist to call for disclosure, and the party decline to enter into useless discussion, or answer idle curiosity, no legitimate inference to his prejudice can be drawn from his silence." And in *Mattocks v. Lyman*, 16 Vt. 113, 119, "With some men, perhaps, silence would be some ground of inferring assent, and with others none at all. The testimony then would depend upon the character and habits of the party,—which would lead to the direct trial of the parties, instead of the case." And in *State v. Hogan*, 252 S. W. 387 (Mo.), it was pointed out that according to Matthew 27:12-14, when Jesus was brought before Pilate, the following transpired: "And when he was accused of the chief priests and elders, he answered nothing. Then said Pilate unto him, Hearest thou not how many things they witness against thee? And he answered them never a word; insomuch that the governor marveled greatly."

Because an attempt to analyze them all would unduly prolong this opinion, suffice it to say our own decisions

reveal two characteristics, (1) that our courts have never hesitated to refuse to apply the rule whenever they felt an accused person's silence was explainable, and (2) they have carefully avoided broad generalities as to its application except in the clearest categories. See *Com. v. Karmendi,* 325 Pa. 63, 67, 188 A. 752.

It has been held, for example, that the rule has no application where the accusing statements were made in the course of a judicial proceeding, *Com. v. Zorambo,* 205 Pa. 109, 54 A. 716; *Com. v. Lisowski,* 274 Pa. 222, 117 A. 794; where the accused made frequent denials, both previous to and subsequent to the particular accusations sought to be introduced, *Com. v. Mazarella,* 279 Pa. 465, 124 A. 163; and where in a speakeasy, defendant made no denial when he was introduced as one of the "bosses," *Com. v. Coyne,* 115 Pa. Superior Ct. 23, 175 A. 291. In a number of jurisdictions where, as here, an accused is under arrest, the courts have adopted a general rule that "he is under no duty to speak and that his silence should not be counted as giving assent." [1] But here again our courts have avoided a rigid rule. *"Ordinarily* silence when one is charged with a crime should not be received as evidence of guilt ......" (Italics supplied) Chief Justice KEPHART in *Com. v. Karmendi,* 328 Pa. 321, 335, 195 A. 62. And see *Com. v. Smith,* 105 Pa. Superior Ct. 497, 161 A. 418. And in the following cases, in all of which defendant was under arrest and in custody, the rule was applied: *Com. v. De Palma,* 268 Pa. 25, 110 A. 756, where defendant opened the conversation with the deceased's wife by asking what was the matter, whereupon she accused

---

[1] *People v. Pignotaro,* 263 N. Y. 229, 188 N. E. 720; *People v. Rutigliano,* 261 N. Y. 103, 184 N. E. 689; and in *People v. Dolce,* 261 N. Y. 108, 184 N. E. 690, the Court of Appeals of New York expressly overruled the earlier case of *Kelley v. People,* 55 N. Y. 565. See also *Yep v. U. S.,* 83 Fed. 2d. 41 (10th circuit); *People v. Williams,* 133 Cal. 165, 65 Pac. 323; and *State v. Ferrone,* 97 Conn. 258, 116 A. 336.

him of murdering her husband; *Com. v. Karmendi*, 328 Pa. 321, 195 A. 62, where defendant was accused of murdering *her own child; Com. v. Weigand*, 134 Pa. Superior Ct. 603, 5 A. (2d) 385, where defendant, charged with committing an abortion, was taken by a police officer to the home of the girl's mother who immediately accused him.[2]

The aspects of the present case which, in our opinion, bear on the question whether appellant's silence during the meeting in the district attorney's office was admissible as proof of his assent to the statements there made are, (1) the meeting was deliberately staged for the purpose of procuring evidence, (2) the meeting was a relatively formal proceeding, (3) appellant had been charged with the crime and was under arrest, (4) he was present at the meeting under guard and under compulsion, (5) the only persons present were hostile to him, and (6) he was not asked any questions until after the meeting had been concluded.

In Wharton's Criminal Evidence (11th ed.), §660, p. 1099, it is stated: "A practice popular among police officials of a means of obtaining evidence by means of tacit admissions is that of reading detailed statements of the crime purportedly made by a co-defendant or companion in the crime with a view towards eliciting either a complete confession or an admission by silence,

---

[2] There are other cases in which the rule has been applied where in response to the accusation the accused made an equivocal denial, *Com. v. Leskoski*, 225 Pa. 382, 74 A. 217; *Com. v. Aston*, 227 Pa. 112, 75 A. 1019; *Com. v. Turza*, 340 Pa. 128, 16 A. (2d) 401; or in some other way manifested his assent, such as by sneering, *Com. v. Karmendi*, supra; or by becoming visibly affected, *Com. v. Ford*, 86 Pa. Superior Ct. 483; *Com. v. Ballon*, 229 Pa. 323, 78 A. 831; and there are cases in which the courts have refused to grant a new trial because of the admission of the evidence of assenting silence on the ground that proof of defendant's guilt without it was so overwhelming the court regarded its admission as harmless, *Com. v. Sydlosky*, 305 Pa. 406, 158 A. 154, *Com. v. Westwood*, 324 Pa. 289, 188 A. 304.

438

to be used against the defendant to whom the statement is read. Such statements have been held to be inadmissible when sought to be introduced upon the ground that they were tacitly admitted. The reason for the holding has been that there was no necessity for denying or answering the statement read."

The formality of the proceedings was not without significance. Although the district attorney was not represented and there was no judge or magistrate present, all the other persons in the room were hostile with the exception of the district attorney's secretary who was there to record the proceedings. What was held in the early Alabama case of *Bob v. State*, 32 Ala. 560, 565, is pertinent—that remarks of white persons in the master's house charging guilt upon a slave whose shoe-tracks were being measured were inadmissible because of his condition of 'subordination and discipline.' It is known generally that when a person is charged with a crime and under arrest it is often in his best interest to remain silent; lawyers generally advise it. It is generally known to be an accused's *right* to remain silent. And there is often the fear that anything said may be misquoted, misrepresented or misconstrued.

The fact that appellant was taken to the district attorney's office under guard and *compelled* to remain while the statement was being taken is of prime importance. He was not there voluntarily; he did not voluntarily hear the statements. Appellant was not advised that an incriminating statement was about to be made in his presence, that he was at liberty to go or remain as he wished, and that if he remained *either* anything he said *or his silence* might be used against him; evidence thus obtained is subject to many of the objections of an involuntary confession.

The fact that appellant was not asked any questions at the meeting, by itself and under different circumstances, would perhaps not be of great importance.

Under the present circumstances it was at least an aggravation. It was undoubtedly important to the police that he *not* be asked any questions. He would undoubtedly have denied them on the spot. And if he had, the whole purpose of the meeting would have failed.

In our opinion, the proof of what transpired at the meeting was wholly inadmissible. And since there was virtually no other corroboration of the commonwealth's principal witness, it undoubtedly carried great weight with the jury and was prejudicial to him; in this respect the case is distinguishable from such cases as *Com. v. Sydlosky*, 305 Pa. 406, 158 A. 154, where it was said at p. 411: "The repetition of these statements of fact, actual occurrences in the crime, as part of a conversation in the presence of defendant, added nothing to their weight and could have done the appellant no harm."

## II.

Because of the importance we attach to it, we shall refer briefly to an occurrence which took place during the trial, although it is not made the basis of an assignment of error.

Appellant called as a witness William McLaughlin. He was the manager of the Hotel Carlton in Scranton. Prior to the trial he had been interviewed at the hotel by appellant's counsel and, ostensibly because it was thought his testimony would be favorable to appellant, a subpoena was served on him by a constable and he appeared at the trial. He was in court during the first day. On the second day, when counsel for appellant sought to introduce his evidence, his name was called. There was no response. Counsel for appellant then, having undoubtedly been informed of what had happened, asked the court to send for the district attorney and to compel him to explain the witness' absence. It then developed that, after adjournment on the previous day, the witness, with one or two others, had left the

court room and entered an automobile which was driven by one of the others to the Hotel Easton; that, upon arriving at the hotel, Officer Ruppert, who had trailed the car from the court house to the hotel, came up to the car and placed the witness under arrest; that, without being told why he was being arrested and without any information against him, the witness was taken to the court house, finger-printed and photographed and placed in jail where he remained over night and until subsequently brought into the court room; and that, during the entire time he had been confined, he was not interviewed or questioned by anyone. He was apparently given the "silent treatment;" he was left to fathom, if he could, the basis for his mysterious incarceration.

The district attorney's explanation of what was, certainly at first blush, high-handed treatment of a defense witness was that "we intended to detain him for forty-eight hours for the purpose of questioning him." By way of justification, he then advanced two very lame excuses. His first excuse was that the officer had discovered that the driver of the car, *who was not the witness,* was carrying an unsigned operator's license; the second excuse was that on the previous day the witness had spoken to one of the jurors. The obvious answer to this excuse was, as pointed out by counsel for appellant, that the entire matter had been investigated by the court on the previous afternoon, the juror had been interviewed, the court was satisfied that the conversation was entirely accidental and innocent and that the juror had been permitted to resume his seat in the jury box.

Apparently the opportunity for reflection furnished by the involuntary retreat with which the district attorney favored the witness paid dividends. When finally the witness was called to the stand, he manifested a loss of memory which would have been difficult to ex-

plain if the district attorney's generous hospitality had not been disclosed.

It requires no argument to demonstrate that the conduct we have just described resulted in the intimidation of an important witness. The guilt or innocence of appellant turned entirely on whether the jury believed the girl or whether it believed appellant on the vital part of her testimony that he had driven her to Scranton in his automobile and accepted money from her. The presentation of appellant's defense was, to say the least, fraught with many difficulties. The girl's youth was against him, although as we have pointed out, by the time he met her she had admittedly been a prostitute for some months and he had nothing whatever to do with her descent from respectability. He was obviously a man of low moral standards. And because of the class of people with whom he chose or was compelled to associate, the only witnesses he was able to call were, in addition to McLaughlin, Rose Marino who admitted operating a bawdy-house in Scranton for fifteen years (and who, from some of the remarks in the record, looked the part), and the proprietress of a roadhouse on Route 309. But neither appellant's morals nor those of the people with whom he associated were on trial. He was charged with a specific statutory offense; the burden was on the commonwealth to prove he was guilty beyond a reasonable doubt. We think the police and the district attorney violated those fundamental principles of fair play which are implicit in our judicial process.

### III.

There is no merit in appellant's remaining contentions. The effect of the evidence of the payment of money by the girl to appellant was properly limited by the court, both at the time it was introduced and in the charge, to corroboration of the purpose for which appellant transported her to Scranton. The slight misquotation of testimony complained of we consider harm-

less, particularly in view of the fact that the jury were cautioned that recollection of the evidence was entirely for them and in view of the further fact that the misstatement was not called to the court's attention or excepted to at the end of the charge. The contention the court failed to charge the jury on the quantum of proof necessary to establish an alibi is without merit. The defense of alibi was introduced, as in *Com v. Russell,* 149 Pa. Superior Ct. 326, 27 A. (2d) 494, as an after-thought, no exception was taken to the charge on the ground now urged, and it was not presented in the court below until after the verdict.

The second, sixth and seventh assignments are sustained and the judgment reversed with a venire facias de novo.

DISSENTING OPINION BY RHODES, J.:

I find no reversible error in this record; therefore I dissent from the conclusion of the majority.

The elements enumerated in the majority opinion as taking this case out of the general rule find no support in the decisions of our Supreme Court or of this court. Some of those elements have been considered in other jurisdictions, but, while in some jurisdictions silence of the accused has been held to be inadmissible as proof of his acquiescence or consent to the statements made in his presence where one or more of such elements exist, those decisions are not controlling in view of the definite statement of our Supreme Court as late as *Com. v. Turza,* 340 Pa. 128, 135, 16 A. 2d 401. Limitations of the general rule have been recognized in this state where the incriminating statments were made in the course of a judicial proceeding *(Com. v. Zorambo,* 205 Pa. 109, 54 A. 716), and where there has existed no motive or opportunity to deny. The fact that the accused was in custody or under arrest has never been accorded any significance in this state, although it may have been given great weight in some

other jurisdictions. The majority opinion overrules most of the cases in this state on the subject. If the purpose is to establish a new rule, such rule should be set forth with some degree of certainty. For example, the majority opinion is in direct conflict with most everything that was said by this court in *Com. v. Weigand,* 134 Pa. Superior Ct. 603, 5 A. 2d 385.

That the meeting was deliberately staged for the purpose of securing evidence, as stated in the majority opinion, may be a fact. At that meeting neither the district attorney nor the assistant district attorney was present. In my opinion it is not sufficient to warrant a reversal even if such a motive existed.

At the trial Alice Ewadinger testified to all the circumstances described in her statement in appellant's presence; and there was other evidence indicative of appellant's guilt.

In part 2 of the majority opinion this statement appears: "The guilt or innocence of appellant turned entirely on whether the jury believed the girl or whether it believed appellant on the vital part of her testimony that he had driven her to Scranton in his automobile and accepted money from her." As I view it, this is not entirely accurate. There is more to the case than that. As said in the opinion of the court below: "It must be remembered that the gist of this crime is transportation for the purposes of prostitution. The defendant admits that he did transport Alice Ewadinger from the County of Northampton to Lehigh County and from Allentown in Lehigh County on the highway toward Philadelphia. If the jury believed the testimony of Alice that they stopped at two roadhouses and that at the first roadhouse at which they stopped the defendant asked her if she wanted to work at that place, that then the jury could infer that the purpose of his taking her on this ride was for prostitution and the crime would have been completed before they ever arrived at 'Patler's Log Cabin Inn.'"

I see no point to the discussion under part 2 of the majority opinion. Appellant was represented at his trial by able and distinguished counsel, and the matter therein referred to was not argued or assigned as an error. It was not even given as a reason for a new trial in the court below. In any event, this was a matter within the control of the trial judge, and I am sure that if he thought that what transpired was prejudicial to appellant he would have acted accordingly notwithstanding that there was no request made by appellant's counsel for any action or ruling by the court. There is nothing to indicate, and there is no complaint, that appellant did not receive a fair and impartial trial. This is the fundamental question, and not whether the police or the district attorney may have failed to exercise good judgment in a matter which was fully presented to the court and to the jury.

The judgment and sentence should be affirmed.