Com. of Pa. *v.* Coyne, Appellant.

Argued September 24, 1934.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*John Duggan, Jr.,* for appellant.

*Earl R. Jackson,* Assistant District Attorney, and with him *Andrew T. Park,* District Attorney, for appellee.

OPINION BY KELLER, J., November 22, 1934:

Appellant was jointly indicted and tried with Thomas Dolan and Thomas Goslin on the charge of keeping a gambling house and being a common gambler. They were all convicted. Dolan and Goslin did not appeal. Coyne has appealed, claiming that the evidence was not sufficient to support a conviction.

The Commonwealth's evidence showed that a gambling house, known as the Monaca Club, was maintained at 3802 Forbes Street, Pittsburgh; that there was a bar on the first floor, and a casino or gambling room, with gambling games and apparatus, on the second floor; and evidence was produce linking Dolan and Goslin with the proprietorship of the place. It was shown that the furniture, rugs, carpets and furnishings in the club had been ordered by Dolan, under the name, Howard Johnson, or by Goslin, and had been received and paid for by Dolan and Goslin; that both Dolan and Goslin had worked about the place and had been in apparent charge and control of it; and the lease for the building had been signed by 'Howard Johnson,'—

which was an alias used by Dolan,—as tenant. Coyne was not linked up with any of these transactions. Three matters were presented in evidence, which, it was contended by the Commonwealth, connected him with the ownership and control of the gambling house.

(1) On one occasion, while Coyne was standing at the bar, downstairs, a man came in and handed him some neckties. Coyne reached in his pocket, pulled out a greenback or paper money bill, which the other man evidently could not change, and Coyne stepped behind the bar, opened the cash register, *changed the bill* and paid the man for the neckties. Coyne did not pay for the neckties by money taken,—i. e. appropriated,— from the cash register; he merely changed the bill. The circumstance is indicative of Coyne's close acquaintance with the place and its management, but it does not establish *ownership or proprietorship*.

(2) On another occasion, while a man and a woman were standing at the bar drinking, Coyne came by and the man grabbed hold of him and introduced him to the woman, saying, "This is my cousin Tom, one of the bosses." To which Coyne said, "Will you have a drink?" and he *purchased* a drink for them. The appellant denied that he had heard any such remark, or that the alleged occurrence happened; but if it did, it was not of such a character, or upon such an occasion, as *called for or required* any response or denial on his part, and his failure to deny it at the time cannot be construed as an admission by him that it was true: Moore v. Smith, 14 S. & R. 388, 392, 393; Mickewicz v. United States, 4 Fed. (2d) 48, 49; People v. Koerner, 154 N. Y. 355, 374, 48 N. E. 730, 736; Sorenson v. United States, 168 Fed. 785, 792; Com. v. Kenney, 12 Metcalf (Mass.) 235, 237. These cases authoritatively hold that a failure to deny a statement made in one's presence and hearing will be construed to be a tacit admission of its truth only when it is made in

such circumstances, and by such persons, as naturally to call for a denial, if one does not intend to admit it. Silence is considered an admission, only when the circumstances are such that one ought to speak and does not. The cases dealing with the failure of one charged with having committed a crime to deny it are not in point for this appellant was not being *charged* with the commission of any crime. See Ettinger v. Com., 98 Pa. 338, 345; Vaughan v. State, 42 L. R. A. (N. S.) 889, 891; Underhill's Criminal Evidence, 3d Ed., Sec. 208, p. 295, notes 29 and 30.

(3) The police, in their raid on the gambling house, found in the drawer beside the register, at the bar on the first floor, a small loose-leaf black book, indexed with alphabetical tabs, which contained seventy charge accounts. Most of the accounts were opened in the name of the person charged, but as to three of them, initials only were used. These were 'T. C.,' 'T. D.' and 'T. G.' Against 'T. C.' there were between September 7 and January 19, thirteen charge items, aggregating $259.65; against 'T. D.' between September 7 and January 25, sixty-six items, aggregating $1,150.85; and against 'T. G.,' between September 13 and January 26, thirty-four items, aggregating $529.13. The charges against all the people whose names or initials were in the book were in the same handwriting. None of it was Coyne's. Some entries relating to 'bad checks' in the back of the book connected it with the casino upstairs.

Dolan, when on the stand, admitted that the initials 'T. D.' stood for himself; and testified that the initials 'T. G.' stood for Goslin; but he denied knowing for whom the initials 'T. C.' stood.

There were no differences in the book, as respects the charges against T. C., T. D. and T. G. and the other 67 accounts, except that there were more of them entered against the initialed accounts. On their face

they did not show a division of profits, for the charges in the three initialed accounts did not correspond at all as to dates or amounts. Dolan testified that the book was kept so that the bartenders, when customers came in, could look it up and see how much they owed; and that the account bearing his own initials represented money which he had received, which had been paid out to him and charged against him.

No one could reasonably hold that all the persons whose names appear in the book were partners or proprietors of the place. On mature consideration we are of opinion that it does not afford reasonable ground for holding that the account in the book against 'T. C.,'—even if those initials stood for Thomas Coyne, as to which there is no evidence,—was sufficient to justify a finding that he was a partner in or proprietor of the establishment.

The three items of evidence presented against the appellant, whether taken separately or all together, can not reasonably be held to furnish sufficient proof that appellant was concerned as a party in the keeping of this gambling house. He may have been, but the Commonwealth failed to present sufficient and adequate evidence of it.

On the evidence in the record before us Coyne could not properly have been held liable as a partner or proprietor in a civil action in assumpsit brought to recover payment for the goods or merchandise furnished for use in the house. It would have been insufficient to sustain a verdict. Much less can it be allowed to sustain a conviction in a criminal case, where the measure of proof necessary is stronger than in civil actions.

The first assignment of error, which complains of the refusal of the court below to direct a verdict of 'not guilty,' is sustained. The judgment is reversed and the appellant discharged.