Commonwealth *v.* Weigand, Appellant.

604

Argued March 15, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*James F. Masterson*, for appellant.

*James W. Tracey, Jr.*, Assistant District Attorney, with him *Charles F. Kelley*, District Attorney, for appellee.

OPINION BY PARKER, J., April 12, 1939:

The defendant appeals to this court from a sentence for the crime of felonious abortion and complains of certain alleged errors in the admission of testimony and in the trial judge's charge to the jury. The judgment must be affirmed.

A girl seventeen years of age died within a few days

after she had aborted as a result of the use of some instrument. The defendant was questioned by Detectives May and McHugh with reference to anything that he might know about the crime and he denied any connection with it. He was then taken to the residence of the mother of the deceased where the mother was questioned in defendant's presence as to the circumstances tending to show that the abortion had been produced by the defendant.

Detective May was permitted to testify as to statements made at that time by Mrs. Mayes, the mother of the victim, and as to the reaction of the defendant to her charges. The detective stated that Mrs. Mayes identified the defendant and said that he was the one who had performed the abortion on her daughter and that she paid him forty dollars for the operation, twenty-five dollars on one visit and fifteen dollars on another visit. Mrs. Mayes had previously testified in greater detail to those same facts. The trial judge very properly permitted counsel for the defendant to cross-examine the detective before receiving the evidence.

Defendant contends that the testimony of the detective should not have been admitted because defendant was not specifically asked to affirm or deny in her presence the statements of the mother and because the defendant an hour or more later, when he had gone to police headquarters, did make a denial. We quote from the record: "Q. Now, Detective May, you did not ask Weigand any questions at all in front of Mrs. Mayes, did you? A. I asked him there if he had anything to say, and he had nothing to say. He didn't deny it or he didn't say yes or he didn't say no." However, it was shown that the detective had testified at a previous trial as follows: "Q. So that this testimony appearing in the record: 'Did you ask the defendant any questions in the presence of Mrs. Mayes? A. No, I did not. Q. Did you ask the defendant anything? A. Not at the time, no.' Would you say that that would be probably

the better recollection of what occurred? A. Well, if I answered that before, counsellor, I did ask that one question, if I recall it right." Detective McHugh, who accompanied May to the Mayes home, testified that the defendant was not questioned but that he neither admitted nor denied the charge. There was other evidence than the implied admission of guilt sufficient to sustain the verdict.

"Ordinarily silence when one is charged with a crime should not be received as evidence of guilt and is not admissible for any purpose unless there is other evidence in the case from which guilt may be inferred. But where there is such evidence as in this case, 'silence' when accused of the crime becomes itself evidence": *Com. v. Karmendi*, 328 Pa. 321, 335, 195 A. 62. Also see *Com. v. Johnson*, 213 Pa. 607, 608, 63 A. 134; *Com. v. Sydlosky*, 305 Pa. 406, 411, 158 A. 154. This kind of evidence is received because the party by his silence is supposed to acquiesce; qui tacet consentire videtur. As Mr. Justice DUNCAN pointed out in an early case: "This is quite too loose; two men, at this rate, might talk a third out of his whole estate, with a witness! Nothing can be more dangerous than this kind of evidence; it should always be received with caution, and never ought to be, unless the evidence is of direct declarations of that kind, which naturally calls for contradiction; some assertion made to the man, with respect to his right, which, by his silence, he acquiesces in": *Moore v. Smith*, 14 S. & R. 388, 393. As a party is not now disqualified as a witness, the rule is not applied with the strictness that it once was. Professor Wigmore (2 Wigmore on Evidence, §1071) says: "The general principle of Relevancy tells us that the inference of assent may safely be made only when no other explanation is equally consistent with silence; and there is always another such explanation—namely, ignorance, or dissent—unless the circumstances are such that a dissent would in ordinary experience have been expressed if the communication had not been correct."

While it was for the jury to determine whether the statement of Detective May that he specifically interrogated the defendant was the fact, in view of the contradiction of the Commonwealth's witness, McHugh, we prefer to assume, for the sake of argument, that the jury found merely that the defendant remained mute.

Mrs. Mayes did not stop with the statement that defendant was the person who had caused the abortion. She pointed to the defendant and stated that she had paid him forty dollars for his services. She described his visits to the house and what he had done. It does not appear to us that a young man twenty-eight years of age who was innocent of any connection with the crime would have remained silent under such serious charges. We deem his silence under such circumstances to be ground for an inference of his assent to her statements. It was for the jury to draw the proper inference and to determine the weight that should be given to his conduct. The belated denial made by Weigand after he left the presence of Mrs. Mayes came too late to destroy the effect of his previous silence. One would expect the reaction of an innocent person to such specific charges to be exhibited by a strong and spontaneous denial. The denial that was made came after sufficient time to weigh the consequences. The delay would seem rather to add significance to the previous silence and to be more in keeping with the character of a person who had committed a crime of the nature here charged than with that of an innocent person. We have no doubt of the relevancy of this evidence.

Appellant next complains of the refusal of his second request for charge. That point, after reciting the defendant's version of certain evidence, concluded as follows: "All of which testimony is uncontradicted, and if true would justify the jury in concluding that she did not know the defendant and that she is making the accusation for the purpose of saving herself." The point was properly refused for it was predicated on a state of facts as to which there was a dispute and it was

for the jury to determine those facts. Mrs. Mayes was shown to have stated under oath before the coroner that she never knew or talked to Weigand. This statement by itself would seem to be a contradiction of her evidence on this trial. Her explanation was that she meant that she had never seen or talked to the defendant until he came to her house to perform the criminal act. In addition, it was admitted by the defendant himself when he took the stand that he had called at the house at the time the Commonwealth charges that the abortion was produced and was met at the door by Mrs. Mayes. In other words, the defendant himself admits that Mrs. Mayes had met him. In the light of this testimony the explanation of Mrs. Mayes as to her previous testimony would seem to be more than plausible. The defendant was not entitled to have a point affirmed which assumed it to be an uncontradicted fact that Mrs. Mayes had changed her testimony between the time she appeared before the coroner and when she gave her testimony on this trial. The point was objectionable for it assumed the appellant's interpretation of the facts to be undisputed when such was not the case. The facts referred to in the request were the proper subject of argument to the jury and if properly phrased might have formed the basis for some instruction to the jury, but as the point was phrased, it would not only have been of no assistance to the jurors, but would have tended to confuse them.

We have examined the additional assignments of error and find no merit in them or any other matters that call for special comment.

The judgment is affirmed, and it is ordered that the appellant appear in the court below at such time as he may there be called and that he be by that court committed until he has complied with the sentence, or any part thereof which had not been performed at the time the appeal in this case was made a supersedeas.